Hello, my name is David Kaplan, the attorney for the petitioner in this case, Jose Aristy-Rosa. I would like to reserve three minutes for rebuttal.  May I please? Let me move your microphone a little bit. Wherever you want, but I just like the microphone. That's fine, perfect. Thank you. So, this case challenges the Board of Immigration Appeals denial of petitioner's fourth motion to reopen. What? He has made a motion to reopen since his removal order, I believe it was in 2011. And during the course of that period, different things have happened. And every time one of those things have happened, he has challenged. At this point, because of a decision made... We're aware of this history. We know the Second Circuit issued the Minter decision. Okay, thank you. Why should he get equitable tolling? There was nothing that prevented him from raising these very arguments sooner, and he didn't try to raise them sooner. He's just saying the law has changed, so I should be able to raise it. So, why should we treat that as an extraordinary circumstance? I believe that the law has changed. But really, what the Second Circuit in Minter found was that the factual basis for the offenses that made my client removable, the factual basis disappeared, essentially. So, it is a change in the law that my client at this point... We are not in the Second Circuit. Its decision doesn't bind us. So, what has changed in terms of the law here that governs? The factual... I'm not talking about the legal issue. I'm talking about the factual issue that was found in the Second Circuit. The Second Circuit said narcotics include substances that are not included in the federal schedules. That's not a legal finding. That is a factual finding. This is not about the facts of what your client did. This is about comparing New York and federal law. Sure. But the finding of that fact made New York law broader than criminal law. It's the fact finding of the Second Circuit in Minter that the schedules are broader. That makes the finding 20 years ago that my client was an aggravated felony and controls... It made it disappear. I think he could have made the same argument. A month or a year or five years earlier. If it was available to him, I mean, of course. If he had hired a chemist that understood all of these details, of course. The standard is a standard for... It has to be a reasonable diligence. In this case, the change in the law, the factual change, the change, the legal... The fact that it didn't occur to him to compare the schedules and make that argument, and then it did occur to Minter's lawyer, is that a reasonable diligence? I believe it is, Your Honor. It is difficult for a respondent, even more over that period of time, to keep a perfect eye on the changes of circumstances as time passes. As soon as he found out about Minter, he filed his motion to reopen. There is, I think, a motion filed right before the argument. Yes. There's a pending collateral proceeding in New York State. That is correct. Can you give us a little more context about what's going on there? Yes. My understanding is that there is a pro bono organization in New York that has been negotiating with the State Supreme Court in New York to change the plea based on ineffective assistance of counsel. Specifically, my client, he was found guilty, I believe it was in June of 1997. Aira Aira became in April of 1997, I believe. So, and of course, there is evidence that I didn't know, but I have learned since I contacted, these people contacted me about the, excuse me one second, my apologies. So, when they contacted me and they sent me a copy of the complaint, it's clear that the attorney that represented my client back then didn't raise any issues relating to Aira Aira, any issues relating to the removability and the severe consequences that pleaing that way would have on him. So, I believe my understanding is in about a week, two weeks, and I apologize, my memory is... It was soon. Just the motion was it was soon. Absolutely, and he, my understanding is that there is an implicit agreement that if he pleads to, and again, I don't have it in mind, but if he changes his plea, then the court would agree to vacate the previous plea. And therefore, my client wouldn't be convicted of the drug offenses, which of course brings the possibility of then he could file another motion to reopen based on a new change. It is a possibility, and my reading of the alternate plea, I think makes it possible that he will be fined. But again, we would stay in this never-ending rolling attempt to right a wrong. What is the wrong? The wrong is that my client right now, right now, my client is not an aggravated felony, and I'm not talking about whether it's Second Circuit or Third Circuit law, I'm talking again about the factual determination of the Second Circuit that will very likely, I don't have a case in circuit court dealing with Minter in particular, but there are some non-presidential district court decisions that we cited that are going in that direction. I mean, at this point, I think that there is an argument to be made that the factual predicate of his conviction, I wouldn't say disappeared, but certainly what was found to be an aggravated felony and a controlled substance violation disappears, and I keep using that word, but it disappears because those convictions wouldn't be, they include, more specifically, cocaine is defined in New York to include all isomers. In federal law, it does not include all isomers. So the only thing that a prosecutor in New York has to prove is that the person has been convicted of sale of a dangerous, no, I'm sorry, of a narcotic drugs. Now that narcotic drugs, it's not that it's wider, but it's finally recognized to be wider. That's what changed, right, was the definition of narcotic drugs, not a fact, but a legal definition. The definition of narcotic drugs was the same. It's just that it hadn't been brought up today. The definition of narcotic drugs didn't change. This was a recognition that there are more narcotic drugs in the New York statute than in the federal statute. But what they were fighting over was not a factual finding, right? It was over the scope of the definition of narcotic drug, either under federal law or under New York law. Yes, but that was a direct, it was a case in New York relating to, it was a Second Circuit case based on a Second Circuit conviction. I cannot make the same claim because we're in the Third Circuit. However, the basis for that decision remains the fundamental piece that made that decision what it is now. Is that there was finally a recognition that there are more. That the definitions didn't line up exactly. Yeah, yeah. Even more also that specifically cocaine, and why do I say that is important? Because there is a question as to whether this statute is divisible or not divisible. There's at least a question. But this is different. In Minter, that question was not even considered. In fact, the court said neither of the parties made a point about this. We are not even considering it. The issue was the definition of cocaine. That was the question and the factual, in my opinion, the factual finding of the court in New York that makes my client's convictions non-removable offenses. All right. Thank you. We'll get you back up on rebuttal. Thank you. Let's see, Mr. Is it Zaidi or Zaidi? Can you hear us? I can hear you fine, Your Honor. It's Zaidi and good afternoon. Can you hear me okay?  Okay. Please, whenever you are ready. I am ready, Your Honor. Is my audio coming in okay for you? It's crisp. Thank you. Go ahead. Excellent. Thank you. Good afternoon, Your Honors, and may it please the court. It is Imran Zaidi for the government. This case revolves around Petitioner's fourth motion to reopen removal proceedings since first being ordered removed 15 years ago in 2011. Along the way, this court has issued its own published decision relating to the denial of Petitioner's third motion to reopen, and I bring all of that context up because it's important for two broad reasons. One is that the finality concerns here are significant, and two is that this means that the only avenues available to Petitioner, even within the already limited context of a motion to reopen, are extraordinary remedies like equitable tolling and sui sponte reopening, which are both extremely limited and subject to very limited judicial review. Now, despite that challenging posture, Petitioner's motion, this fourth motion to reopen, is premised entirely on a change in law from another court, from another circuit, which, of course, does not bind this court, in which even there, even in the Second Circuit, and, of course, we're talking about the Minter decision here, the Second Circuit has recognized that it does not even control one of Petitioner's grounds of removal, which is the controlled substance ground. So we are very, very far afield from the merits of Petitioner's underlying removal order here, and we think the board was well within broad discretion to deny that motion. I'll talk about the two grounds that I'm obviously happy to drill down on, whatever the panel wants me to, but I'll very quickly start with sui sponte reopening because I think that one we can dispense of fairly quickly. There's just very, very limited judicial review there. This court, like others, has said that that decision, whether or not to sui sponte reopen, is committed to the board's unfettered discretion and can only be reviewed to the extent that it relied on a false legal premise. That was certainly not the case here. The board simply said that Minter is an out-of-circuit precedent and so does not bind this court or the board in this case, and that was true. So the sui sponte reopening determination, we think, is not on the table here, and we think that's quite clear under this court's precedents like Plumie. So that leaves equitable tolling, and I think both parties agree on the legal standard here. An equitable tolling claim requires the diligent pursuit of rights, that's the first thing, and the second thing is that some extraordinary circumstance stood in a movement's way. The problem for Petitioner is that this court has never recognized a change in law as a basis for equitable tolling, and that's for good reason. It's because a change in law does not reflect that some extraordinary circumstance stood in an individual or a movement's way. It just means that a legal argument at some point later on prevailed and a legal argument that the movement themselves could have and should have raised initially if they wanted to succeed on it. That's all the more powerful here then when you were talking about a legal argument based on a change in law that didn't even apply in the circuit at hand. This is from outside the circuit again, and I'll note that this court, even though I don't believe it's come out and expressly held that a change in law cannot be a basis for equitable tolling, but that it has recognized that in unpublished decisions like Wu and in Acevedo-Gualpa that that cannot serve as a basis for equitable tolling. Now, I'm happy to talk about anything else regarding the merits here, Your Honor, but I'd like to just very quickly hit on the stay motion because this court has asked for a supplemental briefing on that, and I think everything that I just said, of course, applies in the context of the stay motion because the strongest factor there, of course, is whether Petitioner made a strong showing of likelihood of the merits. We think Petitioner very clearly did not for all the reasons I just said that we laid out in our brief and in our supplemental brief. I think the only other thing that I would add to that is that one of the finality considerations that I brought up before is, of course, the fourth motion to reopen over the course of 15 years since Petitioner was ordered removed. I think that's something that the NICEN itself and subsequent courts have recognized when it comes to the public interest and when it comes to sort of the substantial injury to the government, the court recognized that there is a public interest in a prompt execution of removal orders and that in particular cases there might be an even stronger or heightened concern, and one of the examples or circumstances that NICEN expressly recognized as providing that heightened concern was where a petitioner had sort of abused the processes available to him, and I would say this case falls sort of squarely in that category in respect that there is an option for reopening, but that option is limited, and we are now four motions removed from the original removal order here, and we think in that regard this case falls well outside of the meritorious claim as to Petitioner's removability, and it also means that the stay here is not appropriate. I have a question about the briefing on the stay motion. There was an argument from the petitioner that sort of dated back to the NICEN arguments and a filing by I think S.G. Dreeben at the time and sort of DOJ and DHS's policies in 2012 about essentially returning erroneously removed aliens. Can you speak to the current policies and procedures for how that would work in an instance where there was no stay and a petitioner, we found a petitioner was removed in error? Your Honor, I actually can't recognize, I don't have that information, and I'm not prepared. We don't have a position on the current procedures. I'm at least not aware of one. I know that in the NICEN and the oral argument, and this is I believe a petitioner reciting a stay motion, a representation was made about facilitation of return, and I believe that subsequently DHS or at least the Solicitor General's office indicated they would provide some procedures. I'm not aware of what the current policy is, and perhaps that's just my error, and I'm happy to follow up if the court would like, but I'm not currently aware of what the process is for sort of facilitating any type of return in the circumstance you just identified where somebody is removed without a stay of removal in place, and then it later on turns out that that removal was an error. Of course, obviously, we don't believe that it would be an error here, but I don't have a position on that, Your Honor. Anything else? All right. Thank you, Mr. Saidi. Thank you, Your Honor. A few minutes for rebuttal. Yes, Your Honor. It shouldn't be too long. The government makes a point that my client may be less deserving of equity because he has abused the process. I would like to delve a little bit into the nature of the other motions to reopen to explain what he did. He's not trying to move his arm so he doesn't sink. That's not how it is. Nobody has really tried to deport him, even though he had an order of deportation, an order of removal, I should say. The third motion to reopen, which we filed, was after Governor Cuomo granted him a pardon, and we made an argument that that would remove the grant of removability. It failed, and actually the argument failed, and there is a present decision in this circuit about that. The other two I cannot speak in much detail about because I was not involved in filing them, but they seem like a stumbling attorney trying to fix not having raised some issues during the removal proceeding and things of that nature. So I don't think it's fair to say that my client does not come with clean hands to get equitable relief. Now, with respect to an extraordinary circumstance, it's difficult for me to understand what can be more extraordinary than deporting somebody who at this point is not removable, or is removable because there is an order of removal. But if the case happened today, he wouldn't be removed. That is, he will be banished from coming back to the United States if he's removed as it is because he will have an aggravated felony grant of removability, and they essentially won't be able to come back. There are some exceptions for non-immigrant waivers to come a little bit and say hi to your family and go back home, but that's not the case here. I mean, the equities, it is true that there is a very strong interest in finality, but it's also very true that there is a very strong interest in justice. So with that, I stop. We thank both parties for their briefing and oral argument. We'll take the matter under advisement.